346 So.2d 819 (1977)
Lewis E. JOHNSON
v.
CAPITAL CITY PRESS, INC., et al.
No. 11288.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Rehearing Denied June 13, 1977.
*820 James E. Boren, Baton Rouge, of counsel, for plaintiff, Lewis E. Johnson, appellant.
Frank M. Coates, Jr., Baton Rouge, of counsel, for defendants, Capital City Press, Inc., et al., appellees.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
LOTTINGER, Judge.
This is a defamation suit. From a judgment in favor of defendants granting their motion for summary judgment, plaintiff has appealed.
At the time of the alleged defamation, plaintiff, Lewis E. Johnson, was chairman of the Louisiana Board of Highways. Plaintiff contends that the defendants, Capital City Press, Inc., as owner and publisher of the Morning Advocate newspaper, and the State-Times newspaper, both published in the city of Baton Rouge, Louisiana, as well as Larry Dickinson, reporter, writer and employee of both newspapers as well as Capital City Press, Inc., defamed him by an article that appeared in the State-Times newspaper on October 19, 1972, that the article was repeated in the Morning Advocate newspaper on October 20, 1972, and that in subsequent news stories appearing in the Baton Rouge Morning Advocate on October 21, 1972, the Sunday Advocate October 22, 1972, the State-Times October 23, 1972, the Morning Advocate October 24, 1972, the defendants repeated the libel charging plaintiff with "intimidating business tactics".
In seeking the motion for summary judgment defendants argue that plaintiff at the time of the newspaper articles was chairman of the Louisiana Board of Highways, and thus a public official as that term is used in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and its progeny. Thus they argue that plaintiff must prove that defendants published the articles with actual malice, that is with knowledge that the information contained therein was false or with reckless disregard of whether it was false or not. New York Times v. Sullivan, supra.
In support of their motion for summary judgment, defendants attached thereto an affidavit by the defendant Larry Dickinson which sets forth in detail his sources of information as to specific statements appearing in the alleged articles that the plaintiff contends are defamatory. The affidavit further sets forth that the defendant, Larry Dickinson, had no reason to disbelieve the information furnished. Copies of letters from the Housing Authority of New Orleans as well as copies of various pleadings from court proceedings in which the plaintiff was a party litigant were also attached to the motion.
In opposition to the motion for summary judgment plaintiff filed three affidavits which after attesting that each of the affiants had had many business dealings with the plaintiff further stated "that Johnson has always been honest and fair in his business dealings and he knows of no occasion on which Johnson has evidenced greed or avarice in his business activities. That affiant has always found Johnson to be of a generous nature and good and devoted family man and respected member of his community." Further in opposition to the motion for summary judgment, plaintiff filed his own affidavit which states "that the statements appearing in the article of October 19, 1972 were false; were never [sic] made and were published by defendants with malice and utter disregard as to whether or not same were true. That the entire tone of the Article is designated to reflect upon affiance's personal business reputation and character and nowhere contains any reference to his conduct as a public official. That because of the comments in the Article about affiant's private business dealings affiant has sustained serious injury to his reputation and character and personal financial loss." *821 The Trial Judge in oral reasons for judgment after mentioning Batson v. Time, Inc., 298 So.2d 100 (La.App. 1st Cir. 1974) and Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858 (5th Cir. 1970) concluded that the plaintiff would be unable to prove actual malice, and thus granted the motion for summary judgment dismissing plaintiff's suit with prejudice.[1]
Plaintiff contends on appeal that the articles in question do not involve his conduct as a public official nor do they relate to conduct which would affect his conduct as a public official, and further, that he is not a "public figure" so as to fit within the standard of Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094. Secondly, plaintiff argues that even if the New York Times rule of malice was a prerequisite to his recovery, then the Trial Judge erred in ruling the plaintiff could not make the required showing of malice.
On the dates the article complained of appeared in the defendant newspapers, plaintiff was a member of the Louisiana Board of Highways,[2] and thus a public official.
The United States Supreme Court in New York Times Co. v. Sullivan, supra, said: "The Constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with `actual malice'that is, with knowledge that it was false or with reckless disregard of whether it was false or not."
Though the Supreme Court spoke in terms of "official conduct" in Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125, the court tempered that language as it pointed out in Monitor Patriot Co. v. Roy, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35, when it said "In Garrison v. Louisiana, supra, we reversed a conviction for criminal libel of a man who had charged that a group of state court judges were inefficient, took excessive vacations, opposed official investigation of vice, and were possibly subject to `racketeer influences.' The Louisiana Supreme Court had held that these statements were not `criticisms * * * of the manner in which any one of the eight judges conducted his court when in session, `but rather were accusations of crime and `personal attacks upon the integrity and honesty' of the judges. This court rejected the proposed distinction:
`Of course, any criticism of the manner in which a public official performs his duties will tend to affect his private, as well as his public, reputation. The New York Times rule is not rendered inapplicable merely because an official's private reputation, as well as his public reputation, is harmed. The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the officials private conduct.'"
Monitor Patriot Co. v. Roy, supra, was a case wherein a newspaper characterized Alfonse Roy, a candidate for public office, as a "former small time bootlegger".
Thus, the reporting of the plaintiff's private business activities, regardless of their relationship in time to his holding office, fall within the New York Times rule where facts show his integrity, qualifications, compassion, honesty, ethics, or "anything which *822 might touch on an official's fitness for office."
As to the plaintiff's contention that the Trial Judge was in error in ruling that plaintiff could not make the required showing of malice, we disagree. In opposition to the motion for summary judgment plaintiff filed affidavits attesting to his good moral character only, which, in conjunction with the pleadings and any other acceptable evidence, do not present any evidence establishing a genuine issue of material fact, that is, whether the trier of fact could conclude with "convincing clarity" that the defendants acted with malice or with such reckless disregard of whether the facts contained in the published articles were false or not.
The plaintiff cannot resist the defendant's motion for summary judgment by merely arguing that there is an issue for the jury as to malice, unless he makes some showing from which malice may be inferred. Thompson v. Evening Star Newspaper Co., 129 U.S.App.D.C. 299, 394 F.2d 774 (1968). And in order to proceed past the motion for summary judgment stage of the proceedings, the plaintiff is required to show that he has sufficient probative substance to be able litigable to give rise to an issue of fact of whether such malice actually existed or not. United Medical Laboratories v. Columbia Broadcasting System, 404 F.2d 706 (9th Cir. 1968).
And as one Federal Court has said, "in no other area of civil litigation is the burden so ominous as in the law of defamation. To survive summary judgment proceedings it is necessary that plaintiff offer some evidence upon which a jury could find convincing clarity of actual malice or reckless disregard. * * * There must be ` * * * sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts'" as to the truth or falsity of the publication. Ragano v. Time, Inc., 302 F.Supp. 1005 (M.D.Fla.1969).
The plaintiff has not met the burden imposed upon him and thus, the judgment of the Trial Court is affirmed. All costs of this appeal to be paid by plaintiff-appellant.
AFFIRMED.
COVINGTON, Judge, concurring:
I concur for the reason that I believe that, considering the plaintiff's pleadings and affidavits in the light most favorable to him, there is no genuine issue of a material fact regarding actual malice posed in the instant case under the guidelines set out by Batson v. Time, Inc., 298 So.2d 100 (La.App. 1 Cir. 1974), writ denied, La., 299 So.2d 803.
By concurring in the result I do not intend to reassure the news media that unwarranted personal attacks on public officials bear a unanimous stamp of judicial approval. Character assassination is cloaked with no mantle of immunity by the First Amendment. The published articles in the instant case contain opprobrious remarks concerning the physical characteristics of the plaintiff which can only be labeled as "cheap shots". To use, or abuse, such a precious freedom right in such a manner reflects adversely on the exponent of the art, if not the art itself. Such tactics are anathemata to good journalism, generating much more heat than light. They can not be said to be in fulfillment of the worthy aims of the United States Supreme Court in the renowned case of New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), to assure "debate on public issues should be uninhibited, robust and wide-open, . . . (including) vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," in order that we be an informed people.
NOTES
[1] The Trial Judge should have ruled that there was no genuine issue of material fact, that is, whether the plaintiff had any evidence of such convincing clarity from which the trier of fact could find that the defendant acted with actual malice or such reckless disregard of whether the facts contained in the published article were false or not.
[2] Members of the Louisiana Board of Highways are appointed by the governor, and the board has general control, management, supervision, and direction of the State Department of Highways. Art. 6, § 19.1, La.Const. (1921).